In the Matter of Frank J. CRIMMINS, Bankrupt-Appellant.

Victor J. DeROBERTIS and Valda E. DeRobertis, Plaintiffs-Respondents,

v.

Frank J. CRIMMINS, Defendant-Appellant.

No. 74 B 1224.

United States District Court, S. D. New York.

Dec. 4, 1975.

Dale Schreiber, Hammond & Schreiber, New York City, for plaintiffs-respondents.

Sidney H. Reich, White Plains, N. Y., for defendant-appellant.

## OPINION AND ORDER

CONNER, District Judge:

This appeal by the bankrupt, Frank J. Crimmins (Crimmins), is from an order of Bankruptcy Judge Howard Schwartzberg dated May 12, 1975 granting the motion of the creditors Victor J. and Valda E. DeRobertis (the DeRobertises) for a declaration that their claims for securities fraud, as asserted in Civil Action 72 Civ. 3226 filed in this Court and transferred to the U.S. District Court for the Western District of Oklahoma as Civil Action 73–644–T, are not "provable debts" within the intent of Section 63 of the Bankruptcy Act, 11 U.S.C. § 103, and thus were not discharged by the order entered November 20, 1974. The issue involved—whether a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, is a "provable debt" and therefore dischargeable in bankruptcy— is apparently one of first impression. Judge Schwartzberg ruled that such a claim is not a "provable debt," that it accordingly was not discharged, and that the DeRobertises may continue to prosecute their 10b–5 action.

### The claim against Crimmins

In that action, brought in July 1973 against the now defunct brokerage firm of Walston & Co., Inc. (Walston) and a number of its officers, directors and voting stockholders, the DeRobertises charged that the defendants, including Crimmins, a Vice-President of Walston, had conspired to induce the DeRobertises to purchase common stock of Four Seasons Nursing Centers of America, Inc. (Four Seasons) by misrepresentation and non-disclosure of material facts, with a resulting loss by the DeRobertises of at least $250,000. The claims against all the defendants except Walston and Crimmins were settled for $100,000.

The cause of action alleged against Crimmins is that, as the customer's man in charge of the DeRobertises' account, he recommended the purchase of Four Seasons stock, representing that the Company was financially sound and would continue to show significant earnings growth, that its stock was underpriced on the American Stock Exchange (Amex) and that he (Crimmins) personally had a position of several thousand shares in the stock which he had purchased in the open market, whereas Crimmins "knew, or should have known" that some or all of these representations were false, and further that Crimmins failed to disclose the material facts that he had sold out all of the Four Seasons stock he had purchased on the open market, but held an additional 30,000 shares of unregistered, restricted stock, for which he was indebted to insiders in Four Seasons for some half a million dollars; that he was under investigation by the Amex for his failure to disclose the latter holdings to customers; and that he had been ordered by Walston's compliance department to cease soliciting purchase orders for Four Seasons stock.

### The applicable statutes

Section 17(a) of the Bankruptcy Act, 11 U.S.C. 35(a) provides in pertinent part that

"A discharge in bankruptcy shall release a bankrupt from all his provable debts * * * except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations * * * or for willful and malicious conversion of the property of another; * * * (4) were created by his fraud * * * while acting as an officer or in any fiduciary capacity * * * or (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision."

As amended in 1970, Section 17 provides in subsection (c) that any creditor may file an application with the court for the determination of the dischargeability of any debt, and that, after hearing upon notice, the court may make such determination.

Section 63(a) of the Bankruptcy Act, 11 U.S.C. § 103(a), defines the term "provable debts" as used in Section 17. Generally speaking, it lists all types of fixed and contingent liabilities based upon judgments or contracts, express or implied, including claims for anticipatory breach of contract; however, the list also includes

"(7) the right to recover damages in any action for negligence instituted prior to and pending at the time of the filing of the petition in bankruptcy; * * *."

### The proceedings below

Crimmins filed his voluntary petition in bankruptcy on August 27, 1974 and was duly adjudicated a bankrupt. On November 20, 1974, the court entered an order discharging Crimmins of all his debts other than those excepted under Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a).

On October 23, 1974, the DeRobertises filed, pursuant to Section 17(c), an "objection" to the discharge in bankruptcy of their claim against Crimmins and an application for a determination that it is not dischargeable under Section 17(a). On October 4, 1974, Judge Schwartzberg issued a summons and a notice of trial of this issue on November 7, 1974. After several adjournments of the trial date, in March 1975, the DeRobertises filed a motion for order striking their claims from the schedules to the petition in bankruptcy and declaring that the claims are not "provable debts" within the meaning of Section 17(a). This motion was briefed and orally argued and on April 30, 1975 Judge Schwartzberg filed a written opinion granting the motion.

### Crimmins' contentions

Crimmins makes the following three arguments here:

1. that by asking the bankruptcy judge to determine that their claims were not dischargeable because they resulted either from (a) obtaining money by false representations, or (b) the bankrupt's fraud while acting in a fiduciary capacity, or (c) willful and malicious injury to property (which are respectively exceptions under subdivisions (2), (4) and (8) of Section 17(a) of the Bankruptcy Act), the DeRobertises made an election of remedy which estops them from later taking the inconsistent position that the claims were not "provable debts" as defined in Section 63(a);

2. that under Section 17(a), the issue of dischargeability should have been determined only after a trial on the merits; and

3. that a claim that the bankrupt made representations which he "should have known" were false is essentially a claim of negligence which is expressly made a "provable debt" by Section 63(a)(7).

Before Judge Schwartzberg, Crimmins made the first two of these arguments; Judge Schwartzberg also considered, sua sponte, the third point, and decided against Crimmins on all three. I affirm in all respects.

### I. Alleged election of remedies

Crimmins' estoppel argument is based upon the inference that all of the exceptions listed in Section 17(a) of the Bankruptcy Act must be "provable debts" because, if they were not, it would be superfluous to list them as exceptions to the general proviso that the bankrupt's "provable debts" are discharged.

Professor Collier appears to lend support to this inference, stating, for example, with respect to subdivision (2) of Section 17(a):

"It must, of course, be borne in mind that before clause (2) comes into

play, the liability must be provable, since nonprovable claims are in no event dischargeable." 1A Collier on Bankruptcy, ¶ 14.15, p. 1628.2 (14th Ed.).

However, Crimmins' reasoning ignores an equally plausible possibility: that some of the types of claims excepted in Section 17(a) are "provable debts" and some are not. In that circumstance, it would be meaningful to provide that the excepted types of claims are not discharged, whether they are "provable debts" or whether they are not.

■ Thus, although the lists in Sections 17(a) and 63(a) were intended to be mutually exclusive, the latter listing the types of claims that are dischargeable, and the former listing the types that are not, the wording of Section 17(a) makes it clearly dominant: even if one of the types of claims listed in Section 17(a) may be a "provable debt" it is nevertheless exempt from discharge. *Indemnity Insurance Co. of North America v. Covington*, 172 Misc. 310, 14 N.Y.S.2d 683, 686 (N.Y.Sup.Ct.1939).

■ However, even if I were to conclude otherwise, I would reach the same result in the present circumstances. Although the "objection" filed by the De-Robertises requested a declaration that their 10b–5 claim was not dischargeable on the basis that it falls within one or more of the exceptions listed in Section 17(a), there is no known precedent for a ruling that this estops them from arguing that the claim is not dischargeable because it is not among the "provable debts" listed in Section 63(a).

In *Goldsmith v. Overseas Scientific Corp.*, 188 F.Supp. 530, 532 (S.D.N.Y. 1960), Judge (now Chief Judge) Kaufman permitted a creditor to make alternative allegations that his claim was not a provable debt as defined in Section 63(a) and that it fell within one of the exceptions to dischargeability listed in Section 17(a).

Moreover, despite the limitation of the DeRobertises' "objection" their *motion* clearly alleged that the claims are not "provable debts." Crimmins thus was put on notice that the issue whether the DeRobertises' claims were "provable debts" under Section 63(a) was being raised, and this issue was fully briefed and orally argued. Crimmins was in no way prejudiced by the failure of the complaint to allege this alternative ground of non-dischargeability which was actually litigated, and it would be grossly unfair to deprive the DeRobertises of a valuable claim on such a naked technicality.

## II. Summary disposition

■ Crimmins' second point gives even less pause. Section 17(c) of the Bankruptcy Act, 11 U.S.C. § 35(c), provides that the issue of dischargeability shall be determined "[a]fter hearing upon notice * * *." It does not require an *evidentiary* hearing or "trial," as Crimmins apparently infers, unless there are disputed issues of material fact to be resolved. See *In re Swope*, 466 F.2d 936, 938 (7th Cir. 1972), *cert. denied*, 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973).

Here there are no such fact issues. The exact nature of the claim in question is clear from the complaint in the 10b–5 action, a copy of which was attached to the DeRobertises' "objection." I can conceive of no evidence which might be helpful to the court in resolving the legal issue whether this claim is dischargeable within the contemplation of Sections 17(a) and 63(a) of the Bankruptcy Laws, and Crimmins has suggested none. Under the circumstances, Judge Schwartzberg's disposition after receiving written briefs and hearing extensive oral argument was clearly the appropriate procedure.

## III. Dischargeability of the claim

A reading of the list of "provable debts" in Section 63(a) and of the list of exceptions to dischargeability in Section 17(a) reveals that the dividing line between the two groups is drawn so as to place all the contractual and quasi-con-

tractual claims in the former category and all claims sounding in tort in the latter, with the sole exception of claims based on negligence, which were added to the list of provable debts by amendment in 1934.

The rationale of this division was explicated by the Supreme Court in the leading case of *Schall v. Camors*, 251 U.S. 239, 250, 40 S.Ct. 135, 136, 64 L.Ed. 247 (1920):

> "Historically, bankruptcy laws, both in England and in this country, have dealt primarily and particularly with the concerns of traders. Our earlier bankruptcy acts invariably have been regarded as excluding from consideration unliquidated claims arising purely *ex delicto.*"

■■ A cause of action for securities fraud under Section 10(b) of the 1934 Act and the cognate Rule 10b–5 is one sounding in tort. See *List v. Fashion Park*, 340 F.2d 457, 463 (2d Cir.), *cert. denied*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Even though no such argument had been advanced by Crimmins below, Judge Schwartzberg raised and considered the question whether, when the claim is based on alleged non-disclosure of material facts which the defendant "should have known," the tort is one of negligence which is specifically made a "provable debt" by Section 63(a)(7). Relying upon *SEC v. Texas Gulf Sulfur Co.*, 401 F.2d 833, 854-55 (2d Cir. 1968, *en banc*), *cert. denied, sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), Judge Schwartzberg concluded that a 10b–5 claim encompasses both negligent and wilful deception and

ruled that, to any extent that the DeRobertises' claim was based on Crimmins' alleged negligence, it was therefore a "provable debt" and discharged.

■ On appeal, Crimmins has seized upon this rationale and has tried to stretch it to cover the DeRobertises' entire claim. Even were such rationale correct, but see *Lanza v. Drexel*, 479 F.2d 1277 (2d Cir. 1973) (*en banc*), it would not be so extensible. The main thrust of the DeRobertises' 10b–5 action is not that Crimmins carelessly failed to investigate and report the financial condition of the corporation whose stock he was recommending for purchase but, just the contrary, that he was intimately involved with the corporation as a massive shareholder, and that he failed to disclose this conflict of interest and the pending Amex investigation respecting it. The tort alleged was preponderantly a willful one with only a minor ingredient of negligence, at most.

I conclude that the claim, insofar as it is based upon misrepresentation or non-disclosure of facts known to Crimmins, was not a "provable debt" within the contemplation of Section 63(a). It is therefore unnecessary to consider whether the claim comes under any of the exceptions to dischargeability listed in Section 17(a), such as "liabilities for obtaining money or property by false pretenses or false representations," as excepted by subdivision (2).[1]

For the reasons stated, the order of the bankruptcy judge is affirmed.

So ordered.

---

1. In this connection, see *Speir v. Westmoreland*, 40 Ga.App. 302, 149 S.E. 422 (1929), which ruled that a claim that the principals of a corporation had made fraudulent representations as to its solvency to induce the claimant to exchange valuable real property for stock in the corporation was one for obtaining property by false representations which was not released by the discharge in bankruptcy of the principals.

Subdivision (4) is apparently inapplicable here since Crimmins was merely a stockbroker and did not have a relation to the DeRobertises which anteceded the challenged transaction. *Bryant v. Kinyon*, 127 Mich. 152, 86 N.W. 531 (1901); *In re Camelo*, 195 Fed. 632 (S.D.N.Y. 1912).